Merrimack, Mar. 1, 1949. } No. 3810.

SAVERIO R. ROMANO, *Adm'r v.* LITTLETON CONSTRUCTION COMPANY.

*Orr & Reno* (*Mr. Reno* orally), for the plaintiff.

*Frederick W. Branch* and *Paul E. Nourie* (*Mr. Branch* orally), for the defendant.

JOHNSTON, J.   The finding of the Trial Court concerning the total dependency of the widow should stand unless so clearly erroneous that it could not reasonably be made.   The case of *Veazie* v. *Staples*, 309 Mass. 123, has been cited in oral argument to the effect that where all evidence of substantial importance was contained in public

records, documents and depositions a question of fact of a divorce would be decided in the Supreme Court without deference to the decision of the Probate Judge. Such is not the procedure in this state. It is true that in the present case there was no direct testimony presented orally in the Superior Court. Yet the question of dependency is one of fact and within the jurisdiction of that court to determine. In the case of *Howard* v. *Farr*, 18 N. H. 457, 459, an agreed statement of the evidence was submitted to the Trial Judge. In the law court it was held: "We therefore cannot undertake to consider the evidence contained in the case, further than to ascertain that it is such as might justify a verdict either way. The court will not assume to pronounce upon the weight of evidence." "It was for the superior court to determine the facts as to dependency, and the finding cannot be set aside when the evidence is not conclusive against it." *Lapoint* v. *Winn*, 81 N. H. 357, 359. Such issue of fact is exclusively within the jurisdiction of the Superior Court regardless of the manner in which the evidence is presented. "The judicial system as now established requires that questions of fact arising in the course of trials in the superior court shall be there decided, and the jurisdiction of the supreme court is thereby limited to the question of law, whether there was evidence upon which the decision could reasonably be made as it was made." *Nawn* v. *Railroad*, 77 N. H. 299, 304. See also, *Crowley* v. *Crowley*, 72 N. H. 241; *Champollion* v. *Corbin*, 71 N. H. 78; *Martin* v. *Livingston*, 68 N. H. 562.

There is no doubt that the workman left a widow. There is no legal presumption that she was dependent upon her husband. Compensation is sought under Laws 1939, c. 195, s. 2, which provides for such, "if the workman leaves any widow . . . then wholly dependent in fact on his earnings." Public Laws, c. 178, as amended by Laws 1931, c. 131, provided for a widow "in part only dependent." The test for determining her dependency is whether she was receiving support and maintenance, or, if there was an obligation to support relied on by her, she had a reasonable expectation of future support and maintenance. 58 Am. Jur. 686, 689, and cases cited.

In her deposition the widow testified: "I was wholly dependent on the earnings of my husband on July 11, 1941 and for five years prior thereto receiving about 36,000 lire per year from 1936 to July, 1941." The lira was valued at five cents in 1941. In view of the fact that the deceased was earning only $33 a week at the time of his death and the finding of the Court that "DiNardio was a common laborer and the Court cannot dismiss the thought that during those years men such

as DiNardio had limited earning capacity, most of which was directed toward work on government implied projects at a low rate of pay," the testimony of the widow that her husband was paying her $1,800 a year out of his earnings is incredible. Such payments were improbable. Testimony has been rejected that was contrary to indisputable physical facts. *Lavigne* v. *Nelson,* 91 N. H. 304; *Brown* v. *Mailhot,* 89 N. H. 240. Similarly, the evidence that the deceased sent his wife, 36,000 lire a year from 1936 to 1941 cannot be given credence.

However, the widow gave other answers concerning dependency than the one above quoted as follows: "On July 11, 1941 I was dependent for my support and the support of my child on my husband"; and again, "I and my child were dependent solely on my husband for support." The Court accepted these statements at their face value and awarded the widow the compensation that she was entitled to if wholly dependent in fact on his earnings. It cannot be said that there was no evidence to support this finding and ruling. The deceased was legally obliged to support his wife. In addition to her testimony, receipts were found in his effects for remittances made to her. He sent her money in slightly more than half of the years. The last payments were made in 1938. From the evidence of receipts, the Court could draw reasonable inferences as to other payments made. Although the evidence discloses that at the time of the accident and for the preceding year, Mrs. DiNardio lived with her brother and that after July 11, 1941 she accepted odd job work in the fields, there is no testimony that she had other means of support than her husband prior to said date of the accident.

Only in clear cases of error may it be said as a matter of law that testimony is entirely unworthy of belief. *Hartford &c. Ind. Co.* v. *Brenner,* 92 N. H. 503, 505; *Laplante* v. *Rousseau,* 91 N. H. 330, 331; *Laporte* v. *Houle,* 90 N. H. 50, 52. The testimony of the widow concerning the 36,000 lire a year did not necessarily make unbelievable her testimony that she was dependent wholly on her husband for support.

*Exceptions overruled.*

BRANCH, C. J., did not sit; the others concurred.